IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT S. HARRIS,                                    Case No. 07-1116-HO

        Plaintiff,                              ORDER

   v.

Commissioner of Social Security,

        Defendant.

Plaintiff filed this action for review of the decision of the Commissioner denying his applications for benefits under Titles II and XVI of the Social Security Act.  The administrative law judge erred in finding that plaintiff can perform work other than past relevant work.  Therefore, the decision of the Commissioner is reversed and this matter is remanded to the ALJ for reconsideration and a new decision.

## Discussion

The vocational expert testified that the occupation of inspector, small products sub-assembly, requires three or four tasks, is entry level at the low end of semi-skilled occupations

and has a specific vocational preparation time of three.[1]  (Tr. 932).  The ALJ and VE construed the VE's testimony to conflict with the Dictionary of Occupational Titles.  Id.  The VE's testimony does not constitute the persuasive evidence required to deviate from the DOT, Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995), because the VE incorrectly stated the SVP time for the occupation.  The correct SVP time for DOT code number 736.387-1010 is four.

The ALJ stated clear and convincing reasons to find plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to be not entirely credible. The ALJ cited to evidence reflective of an active lifestyle. (Tr. 98).  As noted by the ALJ: plaintiff was treated for a circular saw laceration to the finger in 2002 (Tr. 586); plaintiff testified that he returned from a two-week vacation in the Bahamas in February 2003; plaintiff reported walking three to five miles daily in June 2003 with back pain of "9" on a scale of 1-10 (Tr. 358); in June 2004, plaintiff reported working as a construction worker (Tr. 486); in June 2006 plaintiff was seen in the emergency room after falling off of a ladder (Tr. 865); and plaintiff exhibited no pain behavior during pool therapy, despite reporting pain at an "8" or "9" level.  Objective medical

---

[1] "[S]emi-skilled work corresponds to an SVP of 3-4."  Social Security Ruling 00-4p.

evidence does not support the allegations of plaintiff and his friend that plaintiff is bedridden by back pain for weeks at a time.

Plaintiff rightly argues that his activities do not prove he can withstand the rigors of full-time competitive employment and that he need not vegetate in a dark room to be entitled to benefits.  The ALJ, however, could infer from the evidence of plaintiff's activities that plaintiff's claim that his back would "lock up" for as much as 24 weeks per year in total lacked credibility.

The ALJ properly considered that plaintiff's testimony that he cannot tolerate pain medications other than Vicodin and Norco is undermined by plaintiff's reports that he did well on Oxycontin and that MS Contin was better than Oxycontin.  (Tr. 360, 576).  The ALJ properly found that plaintiff's testimony that he took three to four Vicodin daily for the past six years conflicts with April 2005 and March 2006 urine drug screens negative for opiates (Tr. 775-76, 819-20).

Plaintiff argues that the ALJ made erroneous and conflicting findings that plaintiff engaged in "drug-seeking" behavior and failed to take recommended treatment.  He further argues that the ALJ failed to acknowledge the evidence that he took narcotic pain medication as a last resort.  The ALJ did not recite or rely on Dr. Price's reference to "probable drug-seeking behavior."

Rather, he acknowledged Dr. Jones's report of no concern plaintiff used narcotics inappropriately. (Tr. 100). The ALJ discussed Dr. Price's notes among several pieces of evidence supporting the finding that plaintiff failed to cooperate with treatment. (Tr. 99). The cited to Dr. Price's report that plaintiff was not interested in exercises because he already knew them, and that he became angry and left without being signed out after being told he would receive Ibuprofen. (Tr. 99, 384). The ALJ properly considered other evidence of plaintiff's failure to follow treatment, such as plaintiff's erroneous report that he lacked coverage under the Oregon Health Plan. Plaintiff made this report only three weeks after reporting coverage. The ALJ also noted that plaintiff left the hospital against medical advice. (Tr. 99, 353, 552).

The ALJ permissibly considered that in February 2004, plaintiff's physician reported that plaintiff responded positively to and was very interested in physical therapy, yet eight days later plaintiff told a physician that he received no benefit from physical therapy. (Tr. 620, 632).

Two reasons cited by the ALJ for his credibility determination are not supported by substantial evidence. The ALJ cited plaintiff's statement to a physician that wanted a medical marijuana card because the drug is a part of his Native American heritage. (Tr. 98, 337). The ALJ failed to note that plaintiff

4 - ORDER

also told this physician that the drug works well for him, as does Vicodin. (Tr. 338). The ALJ also found plaintiff's stated need to lie down for back pain to be inconsistent with plaintiff's testimony that sitting and lying down are his least comfortable positions. (Tr. 98). Elsewhere in the decision the ALJ accurately paraphrased plaintiff's testimony that it is better for him to stand or walk than to sit or lie down, but plaintiff cannot stand when his back is bad. (Tr. 97). These errors are harmless because the other reasons provided by the ALJ for his credibility determination are clear and convincing and supported by substantial evidence.

The ALJ stated specific, legitimate reasons supported by substantial evidence for rejecting Dr. Lees's opinion, which is contradicted by the opinions of state agency consulting physicians. Compare (Tr. 567-70 ) with (Tr. 330-35, 609-14). The ALJ found no medical evidence to support environmental limitations and several extreme postural limitations noted by Dr. Lees. (Tr. 99-100). Plaintiff points to no such evidence. The ALJ found properly found Dr. Lees's assessment of plaintiff's limited walking and standing abilities to be inconsistent with plaintiff's report that he can be up and active for three to four hours. (Tr. 99, 210, 567-68). The ALJ permissibly found the treatment record reflective of an active lifestyle after the alleged onset date. (Tr. 98, 358, 368, 486). Sections

404.1512(e) and 416.912(e) of Title 20 of the Code of Federal Regulations and SSR 96-5p, cited by plaintiff, do not require the ALJ to re-contact Dr. Lees before rejecting his opinion.

The ALJ permissibly rejected the opinion of treating physician Jones that plaintiff is "incapacitated" by degenerative disc disease of the cervical spine and that "disability status would be warranted." (Tr. 100, 766). Plaintiff's credibility and disability are issues reserved to the Commissioner, and the disability determination involves a vocational question outside of Dr. Jones's demonstrated expertise. (Tr. 100). As discussed above, the ALJ properly found plaintiff's symptom testimony to be not fully credible. The ALJ properly considered that Dr. Jones did not acknowledge that urine screens are negative for drugs prescribed for plaintiff's pain. (Tr. 98, 100, 775-76, 819-20). Nor did Dr. Jones mention specific functional limitations. As discussed above, the record contains substantial evidence of an active lifestyle inconsistent with disabling limitations. (Tr. 99).

While Robert Earl's name does not appear in the decision, the ALJ addressed the medical records from this source, which evince limited range of motion due to shoulder pain. (Tr. 98) (citing to exhibit 25F).

ALJs assess residual functional capacity based on all of the relevant evidence, not medical evidence alone, as plaintiff

6 - ORDER

contends at page 16 of his brief.  20 C.F.R. §§ 404.1545,
404.1546, 416.945, 416.946;  SSR 96-8p.  The ALJ assessed greater
limitations than state agency physicians, and fewer limitations
than Dr. Lees.  As noted, Dr. Jones did not assess specific
functional limitations and the ALJ permissibly rejected the
opinions of Drs. Lees and Jones and plaintiff's testimony
regarding the severity of his symptoms.

Substantial evidence supports the ALJ's conclusion that
plaintiff's depression is non-severe.  In May 2005, a social
worker assessed plaintiff's functioning as "65" under the DSM-IV.
(Tr. 382).  This source found average intelligence and accurate
or intact mental functioning, judgment and insight.  Id.  The
state agency consultant found non-severe impairments, no
functional limitations, and no consistent disturbance of mood or
mental/social function in the medical record.  (Tr. 391, 401,
403).  The ALJ assessed mild limitations, which are not
indicative of a severe impairment.  (Tr. 95);  20 C.F.R. §§
404.1520a(d)(1), 416.920a(d)(1).  There is no medical evidence of
greater limitations in mental functioning.

Plaintiff does not allege grounds to enable the court to
review the Commissioner's decision not to reopen the prior, final
benefits decision.  Udd v. Massanari, 245 F.3d 1096, 1008-09 (9th
Cir. 2002).

Plaintiff does not put forth a theory of medical equivalency

7 - ORDER

in challenging the ALJ's finding at "step 3."  In this circumstance, the ALJ's finding is upheld.

This matter is remanded to the Appeals Council for remand to the ALJ for reconsideration of whether plaintiff can perform work other than past relevant work, and for a new decision.  Nothing herein prohibits the ALJ from reconsidering any other issue, or from further developing the record.

Conclusion

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for further proceedings before the administrative law judge.

IT IS SO ORDERED.

DATED this ___9th___ day of December, 2008.

                              ___s/ Michael R. Hogan_____
                              United States District Judge

8 - ORDER